574

Antonio y María Carmen Escudero Caballero, demandantes y apelantes, *v.* Tomás Mulero, demandado y apelado.

Núm. 8711.—*Sometido:* Noviembre 15, 1943. *Resuelto:* Mayo 5, 1944.

*Mariano Acosta Velarde, Federico Acosta Velarde* y *Daniel Pellón Lafuente,* abogados de los apelantes; *Joseph F. McPherson,* Ayudante Especial del Procurador General de los Estados Unidos y *Antonio Riera,* Fiscal Especial, abogados del apelado.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

Antonio y María Carmen Escudero alegaron en su demanda ser dueños en pleno dominio de un islote denominado ''Cayo Sudoeste'' o ''Luis Peña'', próximo a la Isla de Culebra, cuyo inmueble se encontraba inscrito en el Registro de la Propiedad de Humacao; y que el demandado detenta la posesión material de la totalidad del referido islote y en precario, sin pagar canon o merced alguna y sin título o derecho alguno para ello y en contra de la voluntad de los demandantes.

Contestó Mulero la demanda interponiendo contra la misma excepción previa de falta de hechos constitutivos de causa de acción, ya que él no era sino guardián (*caretaker*) del Departamento de Marina de los Estados Unidos; y que el gobierno no puede ser demandado sin su consentimiento. Alegó, además, como materia nueva de defensa, que quien detenta la posesión material de la finca no es el demandado y sí el Teniente de la Marina Americana A. C. Brown, con oficinas en la ciudad de San Juan, Puerto Rico.

En el acto de la primera comparecencia, después de ofrecer las partes prueba documental y testifical, ''a moción de

los abogados de los demandantes, se estipuló posponer indefinidamente la segunda comparecencia por estar el gobierno federal interesado en el caso''.

.En 29 de noviembre de 1939 el demandado radicó una contestación enmendada en la cual negaba que los demandantes fuesen dueños en pleno dominio o en cualquier otro concepto o que tuvieran derecho a la posesión de la finca objeto de la acción. Admitía que detentaba la posesión material de la finca, pero negaba que dicha detentación fuese sin título o derecho alguno o que la misma fuese en contra de la voluntad de los demandantes, y por el contrario alegaba que detentaba la posesión de la finca objeto del litigio en su carácter de celador de la misma por virtud de nombramiento a tal efecto expedídole por el Secretario de la Marina de los Estados Unidos a nombre de los Estados Unidos de América.

Como defensas especiales alega el demandado que su posesión es la posesión de los Estados Unidos de América por virtud del nombramiento antes mencionado; que dicha nación es dueña de la finca desde el año 1899 por virtud del Tratado de Paz, firmado entre Estados Unidos y España; que por virtud de la Orden Ejecutiva del 17 de diciembre de 1901 y de una ley del Congreso aprobada en 1 de julio de 1902, dicha propiedad fué reservada por el Presidente de los Estados Unidos para usos navales. Que como consecuencia de dichas disposiciones, el Departamento de Marina de los Estados Unidos de América, ha estado en posesión continua, pacífica y no interrumpida desde el año 1901 hasta la fecha de la radicación de la demanda en este caso, o sea, el 12 de enero de 1939, y por consecuencia, que cualquier título o derecho que los demandantes pudieran haber tenido sobre la finca objeto del litigio ha prescrito a favor de los Estados Unidos de América.

El 3 de junio de 1941, el demandado, por moción jurada, solicitó de la corte dejase sin efecto la primera comparecencia. Opusiéronse a dicha moción los demandantes, y la corte,

previo el debido señalamiento y después de oír al demandado sin que a la vista comparecieran los demandantes, dictó resolución de fecha 7 de julio de 1941, declarando con lugar la moción del demandado y dejando sin efecto la primera comparecencia celebrada en enero 23 de 1939, ''con el fin de que el demandado pueda hacer uso de la evidencia de que dispone, dándole igual oportunidad a los demandantes si alguna tuvieren que ofrecer en vista de las circunstancias concurrentes, y señala para esta nueva comparecencia. el día 21 del mes en curso a las 9:00 a.m.''

Celebradas ambas comparecencias los días 21 de julio y 4 y 11 de agosto de 1941, respectivamente, la corte dictó sentencia el 13 de abril de 1942 declarando sin lugar la demanda.

No conforme con la sentencia dictada en el caso, los demandantes apelaron de la misma para ante este tribunal señalando en su alegato la comisión de ocho errores por la corte inferior.

En el primer señalamiento se alega que la corte inferior cometió error al declarar con lugar la moción del demandado apelado solicitando se dejase sin efecto la primera comparecencia, toda vez que dicha corte se amparó para sostener su decisión en el artículo 140 del Código de Enjuiciamiento Civil, ''menospreciando los preceptos imperativos de la Ley de Desahucio'', la cual de manera imperativa dispone ''la celebración de dos comparecencias, una para el ofrecimiento de la prueba y otra para la práctica de la misma.''

A este efecto cita los artículos 5 y 6 de la Ley de Desahucio, y sostiene que las disposiciones de dicha ley no dejan discreción al juez ''para alterar las comparecencias o dejarlas sin efecto, a menos que medie el consentimiento expreso de las partes,'' y para sostener su alegación cita el caso de *Avalo* v. *Corte*, 39 D.P.R. 847, 850, donde se sostiene que una corte no tiene autoridad ''para combinar dos comparecencias

a no ser por consentimiento del demandado o por su renuncia''. En dicho caso dijo esta corte lo siguiente: .

"Es evidente que el demandado fué obligado a entrar a juicio sin saber cuál era la prueba del demandante, y por tanto el demandado no tuvo la oportunidad para considerar la prueba escrita, oponerse a ella o repreguntar a los testigos del demandante después de haberse preparado debidamente. Ninguna de estas cuestiones fué subsanada al permitir que el demandado compareciera posteriormente. Todas estas posibles privaciones están cubiertas por la aseveración de que las disposiciones que exigen dos comparecencias son imperativas.''

Como se ve, el caso de *Avalo* difiere sustancialmente del de autos. En aquél la corte combinó ambas comparecencias en una sola que se vieron conjuntamente el mismo día, y de acuerdo con la ley de desahucio era necesario que se celebraran dos comparecencias a menos que el demandado consintiese o renunciase a ello. En el caso de autos se celebró una primera comparecencia, que a moción del demandado y con la oposición de los demandantes, la corte, haciendo uso de su discreción, dejó sin efecto consintiendo en celebrar otra primera comparecencia para dar al demandado una oportunidad de presentar nuevas pruebas de conformidad con su contestación enmendada.

Es de notar que después de celebrada la primera comparecencia en enero 23 de 1939, "a moción de los abogados de los demandantes, se estipuló posponer indefinidamente la segunda comparecencia, por estar el gobierno federal interesado en el caso''.

No vemos, en primer lugar, qué perjuicio se le pudo causar a los demandantes al dejar sin efecto la primera comparecencia. A moción de dicha parte se había pospuesto indefinidamente la segunda comparecencia y según aparece de la propia moción de "Oposición a la moción para que se deje sin efecto la primera comparecencia'' de los demandantes, en su párrafo 4, Legajo de Sentencia, página 12 y siguientes, "después de la vista de la primera comparecencia,

las partes entraron en una serie de estudios y conversaciones para resolver este caso por la vía administrativa y sin la intervención judicial, pero dichas gestiones resultaron infructuosas, quedando mientras tanto pendiente el señalamiento de la segunda comparecencia por estipulaciones que figuran en el récord de este caso''.

Y, en la misma moción, en el párrafo 6, dicen los demandantes:

''6. Que allá para el mes de septiembre de 1940, el Lic. Federico Acosta Velarde, uno de los abogados de los demandantes, dirigió al Lic. Tomás I. Nido, uno de los abogados del demandado, una carta que textualmente lee así:

'20 de septiembre de 1940. Lic. Tomás I. Nido, U. S. Assistant District Attorney, San Juan, Puerto Rico. In re: Antonio y María Escudero vs. Tomás Mulero.—Estimado amigo y compañero: Confirmando nuestra conversación reciente, cumplo con informarle que a nombre y en representación de la Sucesión Escudero hemos resuelto desistir de la demanda de desahucio pendiente ante la Corte de Distrito de Humacao en la causa arriba expresada para radicar, en su lugar, en la Corte Federal una demanda de reivindicación. Oportunamente le enviaremos la moción de desistimiento. Atto. amigo y S. S. (firmado) Federico Acosta Velarde.' ''

Francamente no vemos razón por la cual se pueda sostener el primer error señalado por la parte apelante. La acción de desahucio es una acción sumaria y a tales efectos todo el procedimiento que provee el Código de Enjuiciamiento Civil es uno establecido con miras a que se tramite el pleito rápidamente. En el caso de autos, a estipulación de partes y a moción de los demandantes se pospuso indefinidamente la celebración de la segunda comparecencia; hubo conversaciones entre las partes para resolver el caso ''por la vía administrativa y sin la intervención judicial''; y finalmente se permitió, sin oposición de los demandantes, y después de haber transcurrido más de dos años desde la celebración de la primera comparecencia en el caso, que el demandado radicara una contestación enmendada a la demanda.

¿Qué más natural que la corte accediese, haciendo uso de su discreción, a la solicitud del demandado para que se .dejase sin efecto la primera comparecencia y así permitirle ofrecer prueba demostrativa de lo alegado en su contestación enmendada? No vemos ninguna objeción al efecto. No pueden quejarse los demandantes de dilación en los procedimientos, ya que habían transcurrido, como hemos visto, más de dos años. desde la celebración de la primera comparecencia y unos días más en nada podían perjudicar a quienes tanto tiempo habían aguardado.

Se alega que la corte no tenía facultades para, amparándose en el artículo 140 del Código de Enjuiciamiento Civil, dejar sin efecto la primera comparecencia, ya que las disposiciones de la ley de desahucio son imperativas y no pueden quedar sujetas a la discreción de la corte.

Ya esta corte dijo en el caso de *Gutiérrez et ·al*. v. *Foix et al*. (1915) 23 D.P.R. 73, citando del caso de *Melde* v. *Reynolds,* 129 Cal. 308, en que se interpreta el artículo 473 del Código de California, del cual ha sido tomado nuestro artículo 140; que:

"Este es un precepto reparador y de acuerdo con las prescripciones del artículo 4 del propio Código el cual exige que sea liberalmente interpretado con el fin de que se cumplan sus fines y promueva la justicia, se observa mejor resolviendo los casos por sus méritos sustanciales más bien que atendiendo estrictamente a las reglas técnicas de procedimiento. La discreción de la corte debe siempre ser ejercitada de conformidad con el espíritu de la ley y de tal modo que más bien ayude que impida o destruya los fines de la justicia, considerando los meros tecnicismos como obstáculos que han de ser vencidos más bien que como principios a los cuales ha de darse efecto en derogación del derecho sustancial. (Citas)".

Esta misma regla de liberalidad ha sido aplicada por este tribunal al interpretar las reglas de procedimiento para las acciones de desahucio. Así, en el caso de *García* v. *Brignoni et al.,* (1915) 22 D.P.R. 356, 363, dijo esta Corte, por voz de su entonces Juez Asociado, Sr. Del Toro:

"Es cierto que la sección 6 de la ley de desahucio . . . . dispone que las pruebas propuestas en la primera comparecencia 'se practicarán dentro de un plazo que no podrá en ningún caso exceder de diez días' pero también lo es que dicha disposición debe interpretarse de un modo tal que permita conformarla a las circunstancias que puedan concurrir en las transacciones humanas. Se comprende que ciertos términos, . . . . sean fatales y no puedan prorrogarse, pero existen otros cuya misma naturaleza indica que deben ser y que son en realidad de verdad prorrogables aunque la ley guarde silencio sobre tal extremo . . . . "

Más tarde dijo también este tribunal:

"El objeto de la vista preliminar (en los casos de desahucio) es apercibir a las partes respecto a la prueba documental que ha de ser ofrecida en el juicio, con el fin de acelerar el procedimiento sumario y dar una oportunidad a las partes para prepararse a debatir las cuestiones litigiosas de tal modo planteadas." (Paréntesis nuestro). *Román* v. *Pérez*, (1923) 31 D.P.R. 800, 803.

Al darle la corte una oportunidad a Mulero de presentar, en una nueva comparecencia preliminar, prueba para sostener su contestación enmendada, dejando sin efecto la comparecencia preliminar anterior, no hizo sino dar a los demandantes una oportunidad de prepararse a debatir las nuevas alegaciones hechas por el demandado en su contestación enmendada. No hizo, pues, la corte sino ejercitar su discreción en beneficio de ambas partes, dando a cada una de éstas una oportunidad de presentar nuevas pruebas necesariamente surgidas o halladas en el transcurso de más de dos años, y como tanto una parte como la otra resultaron beneficiadas, y todo se hizo en bien de la justicia, no encontramos que se le haya causado perjuicio a los demandantes apelantes ni que la corte haya cometido abuso de discreción al proceder en la forma que lo hizo. No creemos se haya cometido el primer error señalado.

Los señalamientos segundo, tercero y cuarto los consideraremos conjuntamente por estar basados en el mismo fundamento de derecho, o sea que "la prueba documental en

ellos expresada era inadmisible por no corresponder con la contestación del apelado en la que, según los apelantes, no hay alegación alguna sobre inexistencia o nulidad del título de los demandantes".

La evidencia que según los demandantes fué erróneamente admitida es la siguiente:

(*a*) Los documentos relativos al informe de la Comisión nombrada para ejecutar los trabajos preliminares de colonización de la isla de Culebra;

(*b*) La solicitud de don Cayetano Escudero para la concesión del Cayo 'Luis Peña', de julio 11 de 1881; y

(*c*) Comunicación a don Cayetano Escudero, de julio 30 de 1881.

El demandado en su contestación enmendada y como defensas especiales alegó, en síntesis, (1) que su posesión es la posesión de Estados Unidos por virtud del nombramiento de celador héchole por dicho Gobierno, siendo dicha nación dueña de la finca objeto del desahucio desde el año 1899 por virtud del Tratado de Paz firmado entre Estados Unidos y España y que por Orden Ejecutiva de 17 de diciembre de 1901 y por ley del Congreso de 1 de julio de 1902 (32 Stat. 731) dicha propiedad fué reservada por el Presidente de los Estados Unidos para usos navales. (2) Que el Departamento de la Marina Federal, a nombre de los Estados Unidos de América, ha estado en posesión continua, pacífica e ininterrumpida de la finca objeto del desahucio desde el año 1901 hasta la fecha de la radicación de la demanda. (3) Que cualquier derecho o título que los demandantes pudiesen haber tenido en la finca ha prescrito y descansa hoy en los Estados Unidos.

La prueba documental ofrecida por el demandado, y a que se refieren los errores segundo, tercero y cuarto señalados por los apelantes, lo fué para sostener las defensas especiales levantadas en su contestación enmendada. Dicha evidencia documental fué aceptada condicionalmente por la

corte con el fin de resolver sobre los méritos de la misma más tarde. Al suscitarse durante la vista la cuestión sobre la admisibilidad de tal evidencia, se dijo:

"Sr. Juez: 'Pero estos documentos se refieren a posibles defectos en el título de Cayetano Escudero, pero no se refieren al Gobierno Federal.'

"Demandado: 'Una vez estudiados estos documentos llegará la corte a la conclusión de que estos terrenos pertenecían al Gobierno de España y después, a virtud del Tratado de París, al Gobierno de los Estados Unidos.'

"Sr. Juez: 'La corte entiende que el mejor procedimiento en este caso, es reservarse la resolución para cuando la corte vaya a resolver sobre los méritos. Pero en vista de que estos problemas de evidencia envuelven una lectura detenida de todos esos documentos y envuelven la lectura de determinadas leyes y disposiciones legales de España, la corte cree que va a admitir esos documentos condicionalmente, sin que ello implique que crea que ellos demuestran la inexistencia.'

"Demandante: '¿Cuáles son los documentos que va a admitir?'

"Demandado: 'Informe de la Comisión nombrada para ejecutar los trabajos preliminares de colonización de la isla de la Culebra . . .'

"Demandante: 'Por ser inmaterial e impertinente de acuerdo con las alegaciones y demás objeciones que por ahorro de tiempo no se han repetido . . . .'

"Sr. Juez: 'La corte los admite condicionalmente, sujetos al ulterior estudio que haga.'

"Demandante: 'Tomamos excepción.'"

Estos documentos, como se ve, no podían ser admitidos sino condicionalmente por la corte inferior, a medida que se iban presentando, toda vez que obedecían a un plan del demandado para demostrar que el título de los demandantes había revertido a la Corona de España por no haberse cumplido con las condiciones de la concesión hecha al Sr. Escudero, causante de los demandantes del Cayo Luis Peña. Su admisibilidad estaba sujeta a que la corte hiciese un estudio de dichos documentos para determinar si dicha alegación tenía alguna base para que la corte pudiese determinar si en realidad existía un conflicto de título que hiciese improce-

dente la acción de desahucio, ya que la corte no podía entrar a considerar la cuestión de título en su fondo, según doctrina sentada por este tribunal en innumerables casos. La corte inferior tenía que estudiar dicha evidencia antes de poder resolver si la misma era suficiente para demostrar que la defensa del demandado no era un mero pretexto. (*Colón* v. *Colón*, 51 D.P.R. 97.)

Sobre la admisión condicional de evidencia, ya en el caso de *Colón* v. *Colón* (1937) 51 D.P.R. 97, 104 (in fine) dijo este tribunal:

"El juez de distrito admitió cierta prueba provisionalmente para darle el valor probatorio que tuviera, y se reservó la decisión sobre su admisibilidad. De ordinario la mejor práctica es resolver cuestiones de prueba conforme las mismas son presentadas, pero no habiéndose demostrado prejuicio (sic), el error de haberlo, no es suficiente para justificar la revocación."

El quinto señalamiento de error es en el sentido de que la corte inferior erró "al admitir condicionalmente que después de estudiar resolvería si tomaba conocimiento judicial de la escritura número 48 de abril 27 de 1908 otorgada ante el notario Herminio Díaz Navarro, a pesar de no haber sido ofrecida en la primera comparecencia". Comoquiera que la cuestión levantada es análoga a la que acabamos de analizar, no creemos necesario entrar a considerar la misma.

Alegan los apelantes que la corte inferior cometió un sexto error "al encontrar probado que el Gobierno Federal adquirió su título por prescripción de treinta años sin ser dicho Gobierno Federal parte interesada en el pleito, ni haber solicitado intervención."

En cuanto a este alegado error citan los apelantes las conclusiones del tribunal inferior que tienen pertinencia con el mismo, copiando de la opinión el siguiente párrafo:

"El demandado ha presentado prueba creída por esta corte de que el Gobierno Federal a través de sus agentes ha estado en posesión pública, pacífica y sin interrupción y en concepto de dueño del te-

rreno objeto de este litigio, por espacio de más de treinta años. Bajo esas circunstancias la prueba ha sido suficiente para levantar un conflicto de título. Entendemos y resolvemos que, para que se declare sin lugar la demanda no es necesario demostrar definitivamente que el Gobierno Federal adquirió título por prescripción, sino que es suficiente con que el Gobierno Federal haya presentado un caso prima facie con visos de veracidad y de probabilidad y no desnudo de toda prueba al efecto de que estuvo en posesión del terreno en la forma requerida por la ley.''

No hay duda de que la corte inferior cometió un error. En ningún momento estuvo el Gobierno Federal ante la corte; en ninguna forma intervino el Gobierno Federal en el pleito, ni fué parte en el mismo. Así lo admitieron las partes y lo sostuvo la corte durante la vista en donde al surgir la cuestión se dijo:

"Demandante: 'Nosotros llamamos la atención que este pleito no es con el Gobierno Federal.'

"Demandado: 'Nosotros admitimos eso.'

"Demandante: 'Es una persona particular que admite que él está en posesión del terreno, pero que el Gobierno de Estados Unidos es dueño de ese terreno a virtud de unas leyes.'

"Sr. Juez: 'Hasta ahora la controversia es entre los demandantes y el demandado Tomás Mulero.

"Demandado: 'Sí, señor, nosotros admitimos que el gobierno no es parte aquí.' ''

Se trata en este caso de una acción de desahucio en precario entablada por los hermanos Escudero Caballero para obtener la posesión de un inmueble que alegan les pertenece y al efecto presentan título inscrito en el Registro de la Propiedad de Humacao. La acción se dirige contra Tomás Mulero quien se alega detenta la posesión del inmueble sin título para ello. Como defensa alega Mulero que está en posesión de la finca objeto del desahucio en su carácter de celador de la misma por virtud de nombramiento a tal efecto héchole por un Departamento del Gobierno Federal, quien ha estado por más de treinta años en posesión de dicha finca.

La acción de desahucio es una acción posesoria. En ella solamente puede discutirse el derecho a la posesión de un inmueble y no procede cuando surge de la misma un conflicto de título. Sin embargo, cuando un demandado en desahucio, como en el caso de autos, está poseyendo la finca objeto de la acción para conservarla o disfrutarla, perteneciendo el dominio a otra persona (Artículo 362, Código Civil, Ed. 1930) puede alegar como defensa que posee por un tercero que es el verdadero dueño, persona distinta de los demandantes. *Díaz v. Morales* (1929) 39 D.P.R. 73, 76. Esto fué lo que hizo Mulero y a tal efecto presentó prueba prima facie de la nulidad absoluta del título de los demandantes, presentando evidencia tendente a demostrar que el tercero por quien él actuaba había estado en posesión de la finca objeto de la acción por espacio de más de treinta años, lo cual creemos podía hacer ya que su derecho a la posesión se basaba en el supuesto derecho de su principal.

El demandado tenía que demostrar que su derecho a la posesión de la finca objeto del litigio no era un mero pretexto, *Colón v. Colón* (supra) y creemos que así lo hizo.

En cuanto a la cuestión de si el Gobierno Federal debió o no ser parte demandada y de si era parte en la acción, ya hemos demostrado que nunca fué parte en el pleito y que la corte inferior cometió error al así considerarlo en su opinión, mas fué en realidad un *lapsus,* y no un error perjudicial a los demandantes apelantes. El Gobierno Federal no era parte necesaria en este pleito. En el caso de *Morera v. Navarro Ortiz, Juez,* (1942) 60 D.P.R., 193, 199, dijo este Tribunal por voz de su Juez Presidente señor Del Toro:

"Se trata de recobrar el uso de un camino de que alega el demandante que estaba en posesión dentro del año anterior a la fecha de la interposición de la demanda y de cuyo disfrute lo privaron los demandados a virtud de los actos por ellos realizados.

"El camino pasa por dentro de parcelas de terreno en posesión de dos de los demandados, Ramón Rivera y Benigno González, y ad-

mitiendo que las parcelas pertenezcan a los Estados Unidos y estén bajo el control de la Puerto Rico Reconstruction Administration (P.R.R.A.) y que el otro demandado José Ramírez Martín y el peticionario Luis M. Morera tuvieran, como agentes de la P.R.R.A., bajo su custodia el camino, aún así, no tendría que concluirse que fuera necesario demandar directamente a los Estados Unidos para que la corte adquiriera jurisdicción para ver y fallar el asunto.

"Para sostener esa conclusión será suficiente que citemos del caso de *Baldrich* v. *Barbour*, 90 F. (2d) 867, 868, y 869 lo que sigue:

'Versa este caso sobre una acción incoada en la Corte de Distrito de los Estados Unidos para Puerto Rico para recobrar y retener la posesión de determinadas tierras situadas en Puerto Rico. Los demandantes originales en el pleito y ciertos 'demandantes interventores' alegaron en su demanda que ellos son los dueños en pleno dominio de alrededor de 6,000 acres de terreno situados en el Distrito Municipal de Río Grande, Naguabo, Fajardo y Luquillo, describiéndolos por sus colindancias . . .

" '

" ' 'El demandado, en su carácter de Superintendente de Bosques, reclama el derecho de posesión sobre todas las tierras incluídas en la 'Luquillo Forest Reserve', las que incluyen los terrenos reclamados por los demandantes en esta acción; que dichas tierras han estado ocupadas y han sido poseídas por sus antecesores en el cargo desde 1903; y los demandantes admiten que los terrenos descritos en la demanda han estado en la exclusiva posesión de los Superintendentes del 'Forest Reserve' desde 1913.

" ' '(1) Es evidente que no es ésta una acción para establecer el dominio sobre las tierras. Si así fuese, los Estados Unidos deberían haber sido incluídos como parte, y esto no podía hacerse sin su consentimiento. *United States* v. *Lee*, 106 U. S. 196, 1 S. Ct. 240, 27 L. Ed. 171; y en este caso, que llegó ante esta corte mediante excepción previa, 71 F. (2d) 9, se resolvió que se trataba de una acción para recobrar la posesión solamente y aunque el demandado debe demostrar que los Estados Unidos tenían autoridad para sostener su derecho de posesión, el pleito no era uno para establecer el dominio sobre los terrenos descritos.' "

Esta doctrina es, en nuestra opinión, de entera aplicación al caso de autos, y aunque la corte inferior cometió el error señalado, el mismo no es suficiente para revocar la sentencia apelada.

■■ En su séptimo señalamiento de error alegan los apelantes que la corte inferior erró "al declarar probado que el Gobierno Federal adquirió título sobre el Cayo 'Luis Peña' por el hecho de que la concesión a don Cayetano Escudero fué condicional y que el mismo no cumplió con las condiciones."

La corte inferior no pudo entrar a considerar la cuestión de si real y efectivamente el Gobierno Federal adquirió o no título sobre la finca objeto de la presente acción de desahucio. Los conflictos de título no pueden dilucidarse en estos juicios de carácter sumario en que únicamente se trata de recobrar la posesión de un inmueble por quien tiene derecho a ella. Habiendo el demandado presentado un caso prima facie de nulidad absoluta del título de los demandantes, alegando hechos suficientes a tal fin, procedió correctamente la corte inferior al declarar sin lugar la demanda. *Colón* v. *Colón,* supra.

El recurso de apelación se da contra la sentencia y no contra los razonamientos o fundamentos que le sirven de base. *Colón* v. *Shell Co. (P. R.) Ltd.,* 55 D.P.R. 592. Así, aún cuando los razonamientos del juez sean erróneos, si la conclusión a que él llega en la sentencia es correcta, ésta debe prevalecer. *Totti* v. *Fernández,* 40 D.P.R. 636. Por lo cual, una sentencia correcta no debe alterarse por cualquier error en el razonamiento del juez sentenciador. *Serrallés* v. *Saurí,* 44 D.P.R. 402.

■ En el octavo señalamiento se alega que la corte inferior cometió error "al declarar que el demandado no solamente ha presentado un caso prima facie de inexistencia del título de los demandantes, sino que fué más lejos aún y presentó un caso sustancial de nulidad absoluta; sin que haya alegación en la contestación del demandado que sostuviese dicha conclusión."

La acción de desahucio en precario se da contra aquellas personas que disfrutan de la posesión de un inmueble sin

derecho alguno para ello y sin pagar canon o merced alguna. Por lo tanto, bastará que un demandado en desahucio produzca prueba suficiente ante la corte para demostrar que tiene algún derecho a ocupar dicho inmueble y que tiene un título tan bueno o mejor que el del demandante para que surja un conflicto de título que haga improcedente la acción. Esto fué lo que ocurrió en el presente caso. De toda la prueba presentada por el demandado surge claramente un conflicto de título que hace improcedente la acción de desahucio. Las alegaciones del demandado no son un mero pretexto y los derechos de las partes deben dilucidarse en el juicio plenario correspondiente.

*Por las razones expuestas procede confirmar la sentencia apelada.*

El Juez Asociado Sr. Snyder se inhibió.