Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| MADRIGAL REALTY, LLC; GUILLERMO NEVÁREZ GONZÁLEZ<br><br>Apelantes<br><br>v.<br><br>GONZALO MALDONADO SIERRA, FULANO DE TAL Y OTROS<br><br>Apelados | KLAN202400798 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Ciales<br><br>Caso número: AR2024CV01320<br><br>Sobre: Desahucio (en precario) |

Panel integrado por su presidenta, la jueza Ortiz Flores, la juez Aldebol Mora y la jueza Boria Vizcarrondo.

Aldebol Mora, Juez Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 21 de octubre de 2024.

Comparece la parte apelante, Madrigal Realty, LLC y Guillermo Nevárez González, y nos solicita que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Ciales, el 23 de agosto de 2024, notificada el 26 del mismo mes y año. Mediante dicho dictamen, el foro primario declaró No Ha Lugar la demanda sobre desahucio incoada por la parte apelante.

Por los fundamentos que exponemos a continuación, se confirma el dictamen apelado.

## I

El 12 de julio de 2024, Madrigal Realty, LLC (Madrigal) y Guillermo Nevárez González (Nevárez González) (apelantes), por sí y como miembro administrador de Madrigal, incoaron una demanda sobre desahucio en precario en contra de Gonzalo Maldonado Sierra (Maldonado Sierra o apelado).[1] Sostuvieron que eran los únicos

---

[1] Apéndice II del recurso, págs. 7-10.

dueños y titulares de un inmueble sito en Ciales, en donde Maldonado Sierra residía y disfrutaba precariamente en una porción del terreno. Arguyeron que Maldonado Sierra ocupaba sin derecho la propiedad. Plantearon que habían realizado varios requerimientos a Maldonado Sierra para que desalojara y entregara el inmueble, pero este había hecho caso omiso. Argumentaron que Maldonado Sierra era un detentador de la propiedad en cuestión y, por ello, solicitaron que se le ordenara el desalojo de la propiedad dentro del término mandatorio establecido por ley.

Por su parte, el 20 de agosto de 2024, Maldonado Sierra presentó su alegación responsiva.[2] En esencia, negó las alegaciones en su contra y alegó que ostentaba la posesión del referido inmueble, en concepto de dueño. Especificó que había estado en posesión de esa propiedad de forma ininterrumpida por más de sesenta (60) años, lo cual era de conocimiento general en la comunidad. Como defensa afirmativa y/o reconvención, argumentó que su madre y su padrastro entraron en posesión de la propiedad hacía más de sesenta (60) años, cuando el entonces dueño de la finca, Antonio Ramos, le cedió el lote y una "casucha" enclavada en este, a cambio de que trabajaran en la finca, "por un jornal bajo o de hambre". Indicó que, posteriormente, Antonio Ramos o su sucesión le vendió la finca matriz a Nevárez González. Explicó que este último respetó los derechos de su madre y su padrastro, quienes ostentaban del predio de terreno y con quienes compartía la residencia y el lote de terreno donde estaba enclavada la residencia.

Según adujo Maldonado Sierra, luego de la destrucción de la referida estructura por el paso del huracán George en el año 1998, gestionó las ayudas pertinentes con la Agencia Federal para el Manejo de Emergencias (FEMA), para su reconstrucción y

---

[2] Apéndice III del recurso, págs. 15-24.

rehabilitación. Planteó que, en agradecimiento, su madre y su padrastro le cedieron todos sus derechos sobre el inmueble, por lo que, a partir de entonces, es el único titular de la propiedad. Alegó que los dueños anteriores de la propiedad principal o matriz nunca intervinieron con este y sus antecesores, por lo que poseyeron y están poseyendo el inmueble quieta, pública y pacíficamente en concepto de dueños por más de sesenta (60) años. Argumentó que se cumplían con los siete (7) requisitos cardinales de la figura de usucapión, por lo que era forzoso concluir que había adquirido la titularidad del inmueble por prescripción adquisitiva.

En desacuerdo, el 12 de agosto de 2024, los apelantes presentaron una *Moción Sobre el Procedimiento Sumario de Desahucio en Contra del Precarista*.[3] Indicaron que Maldonado Sierra admitió en su contestación a la demanda que estaba en precario en un lote de terreno que forma parte de la finca en cuestión, sin pagar canon o merced alguna. Arguyeron que dicha alegación responsiva era incompatible con el procedimiento sumario de desahucio establecido en el Código de Enjuiciamiento Civil de Puerto Rico de 1933, 32 LPRA secs. 2821-2838. Argumentaron que el tribunal no debía permitir que una parte demandada en desahucio utilice el pretexto de supuestos títulos adecuados con el objetivo de privar de la protección de la ley a quienes ostentan el título, obligándoles a que acudan al procedimiento ordinario. Según adujeron, no constituía un conflicto de títulos lo expuesto por Maldonado Sierra, ya que este había estado en una institución carcelaria durante las últimas décadas y se encontraba en la comunidad mediante libertad provisional hacía más de un (1) año. Plantearon que Maldonado Sierra era un constructor de mala fe que ocupaba en precario la finca en cuestión, sin autorización alguna

---

[3] Apéndice V del recurso, págs. 27-29.

del dueño. En virtud de ello, **solicitaron que se continuara el procedimiento sumario de desahucio**, ya que habían acreditado ser los dueños y titulares registrales de la propiedad ocupada en precario por Maldonado Sierra.

El día siguiente, **Maldonado Sierra** replicó y **solicitó la conversión del proceso a uno ordinario**.[4] Arguyó que los apelantes sacaron de contexto su alegación responsiva. Alegó que estar confinado en una institución penal no interrumpía el término de prescripción adquisitiva, ya que no era una de las tres (3) circunstancias de interrupción enumeradas en nuestro ordenamiento jurídico. Reiteró que tanto él como sus antecesores habían mantenido la posesión del inmueble de forma pública y pacífica por más de sesenta (60) años, por lo que poseía un título que oponer sobre la propiedad en cuestión, tan bueno o mejor que el alegado por los apelantes. Negó lo relacionado a la construcción de mala fe y reiteró lo alegado sobre ello en su contestación a la demanda. En vista de lo anterior, solicitó que el procedimiento de desahucio se convirtiera a uno ordinario.

El 20 de agosto de 2024, se celebró un juicio en su fondo. Según surge de la *Minuta,*[5] **la parte apelada** hizo un planteamiento sobre la existencia de un conflicto de título. Debido a ello, **reiteró su solicitud de que el pleito se llevara a cabo de forma ordinaria**. En desacuerdo, **la parte apelante** citó a *C.R.U.V. v. Román*, infra, y **solicitó que se dictara una sentencia sumaria**. Entendidos los argumentos de las partes, el tribunal de instancia ordenó a que se procediera con el desfile de la prueba. No obstante, previo a ello, **una vez más, la parte apelada planteó que el caso debía dilucidarse por la vía ordinaria y no sumaria**.

---

[4] Apéndice VI del recurso, págs. 30-36.
[5] Entrada Núm. 16 del Caso Núm. AR2024CV01320 en el Sistema Unificado de Manejo de Casos (SUMAC).

Evaluadas las posturas de las partes, el 23 de agosto de 2024, notificada el 26 del mismo mes y año, el Tribunal de Primera Instancia emitió la *Sentencia* que nos ocupa.[6] En particular, desglosó las siguientes determinaciones de hechos:

1. La parte demandante es titular en pleno dominio de la finca marcada como la número 5930 en el Barrio Frontón de Ciales, en la cual el demandado ocupa una porción de 300 metros.

2. El demandado ocupa dicho predio sin pagar canon o merced alguno.

3. Los padres del demandado ocuparon en concepto de dueños la porción de 300 metros de dicha finca desde principios de la década de 1960.

4. El demandado ha ocupado dicho predio en el mismo concepto luego de la muerte de sus progenitores.

5. El demandado ha estado fuera de la posesión material del predio de 300 metros desde el 2002 hasta el 2020 por convicción en varios casos penales.

6. Antes de ingresar al sistema correccional[,] ni él ni su familia habían sido inquietados en la posesión en concepto de dueños.[7]

El foro primario concluyó que la parte apelada había presentado prueba tendiente a demostrar que estaba en posesión de la finca en concepto de dueña. Determinó que surgía un conflicto prima facie de título que no es posible dirimir en un procedimiento sumario de desahucio. En virtud de ello, desestimó la causa de acción.

Inconforme, el 29 de agosto de 2024, la parte apelante acudió ante esta Curia mediante el recurso de epígrafe y señaló el siguiente señalamiento de error:

Err[ó] manifiestamente el TPI al declarar sin lugar la demanda de desahucio en precario, bajo la premisa equivocada de que existe un posible conflicto de títulos, que no era posible dirimir en este procedimiento o convertir el caso en uno ordinario, con el agravante de que el TPI incurrió en una interpretación equivocada de la ley especial de desahucio en un claro abuso de discreción, prejuicio o parcialidad. La conclusión de

---

[6] Apéndice I del recurso, págs. 1-6.
[7] Íd., págs. 1-2.

posible conflicto de título no está sostenida por el expediente, ya que el demandado-[apelado] no presentó prueba testimonial, documental, pericial ni de ninguna otra naturaleza que evidenci[e] que este poseyó la propiedad en carácter de dueño en posesi[ó]n de mala fe o de buena fe.

En cumplimiento con nuestra *Resolución* del 3 de septiembre de 2024, la parte apelada compareció mediante *Alegato de la Parte Apelada* el 2 de octubre del mismo año.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

## A

El desahucio es un procedimiento especial de naturaleza sumaria cuyo objetivo principal es recuperar la posesión material de una propiedad inmueble mediante el lanzamiento o expulsión del arrendatario o precarista que la detente sin pagar canon o merced alguna. 32 LPRA sec. 2822; *SLG Ortiz-Mateo v. ELA*, 211 DPR 772 (2023); *Cooperativa v. Colón Lebrón*, 203 DPR 812, 820 (2020); *Mora Dev. Corp. v. Sandín*, 118 DPR 733 (1987); *C.R.U.V. v. Román*, 100 DPR 318 (1971). El procedimiento sumario de desahucio procura de la manera más rápida posible, la reivindicación de determinados derechos de la persona arrendadora, tales como recuperar la posesión material del bien arrendado, reduciendo al mínimo constitucionalmente permisible las garantías procesales. Tal proceder sumario ha permitido limitar y acortar ciertos términos y prescindir de ciertos trámites comunes al proceso ordinario, sin que ello conlleve suprimir o menoscabar la oportunidad de la persona arrendataria de ejercer con efectividad sus defensas durante el litigio. *Turabo Ltd. Partnership v. Velardo Ortiz*, 130 DPR 226, 241-245 (1992); *Mora Dev. Corp. v. Sandín*, supra, págs. 749-750. El desahucio no es una de las formas de terminar el arrendamiento, sino un medio de recobrar judicialmente la cosa inmueble

arrendada, cuando aquél se acaba por la concurrencia de ciertas causas extintivas. Esta acción tiene un carácter resolutorio del contrato. *Mora Dev. Corp. v. Sandín*, supra.

El Código de Enjuiciamiento Civil de Puerto Rico de 1933 establece las normas vigentes sobre la acción de desahucio y establece el procedimiento a cumplir en su trámite ante los tribunales. 32 LPRA sec. 2821 *et seq.* En su Artículo 620, el citado estatuto dispone que toda persona dueña de finca, sus apoderados, los usufructuarios y cualquier otra persona que tenga derecho a disfrutar la propiedad y sus causahabientes tendrán a su haber el procedimiento de desahucio. 32 LPRA sec. 2821. Asimismo, el Artículo 627 del Código de Enjuiciamiento Civil de Puerto Rico de 1933, 32 LPRA sec. 2829, permite, a modo de excepción y únicamente a solicitud de parte interesada, acumular una reclamación en cobro de dinero, fundamentada en la falta de pago del canon o precio en que se basa la reclamación de desahucio, dentro del procedimiento judicial sobre desahucio. La acción acumulable no se refiere a aquellas en las que se invoque como defensa un conflicto de título, la defensa de vicios ocultos en la propiedad como justificación para no proceder al pago pactado, o una reconvención por daños. En estas últimas circunstancias se requerirá un juicio plenario o, dicho de otra manera, el juicio declarativo correspondiente en el curso ordinario de los procedimientos judiciales. Cabe destacar que la acción acumulable tiene que estar íntimamente atada o relacionada a la acción de desahucio.

Cónsono con lo anterior, **un conflicto de títulos oportunamente levantado por quien detente la posesión del bien inmueble impide la ventilación sumaria del desahucio**. En ese contexto, el procedimiento debe convertirse de sumario a uno ordinario. A tales efectos, si la parte demandada en un pleito sobre

desahucio produce prueba suficiente que tienda a demostrar que tiene algún derecho a ocupar un inmueble y que tiene un título tan bueno o mejor que el de la parte demandante, surge un conflicto de título que hace improcedente la acción de desahucio. *C.R.U.V. v. Román*, supra; *Escudero v. Mulero*, 63 DPR 574 (1944).

Sobre dicho particular, nuestro más Alto Foro ha expresado que la determinación sobre la conversión de un pleito de desahucio en uno ordinario no configura una regla automática. *Turabo Ltd. Partnership v. Velardo Ortiz*, supra. Dentro del marco procesal sumario del desahucio, la decisión recae sobre la sana discreción del tribunal. *Íd.*

**B**

Sabido es que este Tribunal Apelativo actúa, esencialmente, como foro revisor. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 770 (2013). Es por ello que, nuestra encomienda principal es examinar cómo los tribunales inferiores aplican el Derecho a los hechos particulares de cada caso. *Íd.* Cónsono con lo anterior, el desempeño de nuestra función revisora se fundamenta en que el Tribunal de Primera Instancia desarrolle un expediente completo que incluya los hechos que haya determinado ciertos a partir de la prueba que se le presentó. *Íd.* Es decir, nuestra función de aplicar y pautar el Derecho requiere saber cuáles son los hechos, tarea que corresponde, primeramente, al foro de instancia. *Íd.* Como foro apelativo, no celebramos juicios plenarios, no presenciamos el testimonio oral de los testigos, no dirimimos credibilidad y no hacemos determinaciones de hechos. *Íd.* Esa es la función de los tribunales de primera instancia. *Íd.*

Por el contrario, al momento de analizar prueba documental, prueba pericial o testimonios de testigos ofrecidos mediante declaraciones escritas, estamos en la misma posición que el Tribunal de Primera Instancia. *Ortiz et al. v. S.L.G. Meaux*, 156 DPR

488, 495 (2002). Así, "el Tribunal Apelativo tendrá la facultad para adoptar su propio criterio en la apreciación y evaluación de la prueba pericial, y hasta para descartarla, aunque resulte técnicamente correcta". *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021), citando a *González Hernández v. González Hernández*, 181 DPR 746, 777 (2011). Asimismo, es norma básica que las conclusiones de derecho son revisables en su totalidad por el foro apelativo. *Dávila Nieves v. Meléndez Marín*, supra, pág. 770. Ahora bien, como norma general, los tribunales apelativos aceptan como correctas las determinaciones de hechos de los tribunales inferiores, así como su apreciación sobre la credibilidad de los testigos y el valor probatorio de la prueba presentada en la sala. *Íd.*, pág. 771.

En nuestro ordenamiento jurídico no se favorece la intervención de los foros apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Sucn. Mena Pamias et al. v. Meléndez et al.*, 212 DPR 758 (2023); *Pueblo v. Hernández Doble*, 210 DPR 850 (2022); *Santiago Ortiz v. Real Legacy et al.*, supra. Ello, debido a que el foro de instancia está en mejor posición que un tribunal apelativo para llevar a cabo esta importante tarea judicial. *Dávila Nieves v. Meléndez Marín*, supra, pág. 771.

En consideración a la norma de corrección que cobija a las determinaciones realizadas por el Tribunal de Primera Instancia, cuando una parte peticionaria señala errores dirigidos a cuestionar la apreciación o suficiencia de la prueba, la naturaleza del derecho apelativo requiere que esta ubique al foro revisor en tiempo y espacio de lo ocurrido en el foro primario. Ello se logra utilizando alguno de los mecanismos de recopilación de prueba oral, como lo son: (1) transcripción de la prueba, (2) exposición estipulada o (3) exposición

narrativa. *Pueblo v. Pérez Delgado*, 211 DPR 654 (2023). Los tribunales de mayor jerarquía no pueden cumplir a cabalidad su función revisora sin que se le produzca, mediante alguno de estos mecanismos, la prueba que tuvo ante sí el foro primario. *Íd.*

Sobre ese particular, nuestro Tribunal Supremo ha reiterado que las disposiciones reglamentarias que gobiernan los recursos que se presentan ante el Tribunal de Apelaciones deben observarse rigurosamente. *Pueblo v. Pérez Delgado*, supra. Véase, *Hernández Maldonado v. Taco Maker*, 181 DPR 281 (2011). De esa manera, los abogados y las abogadas tienen la obligación de cumplir fielmente con el trámite prescrito en las leyes y en los reglamentos aplicables para el perfeccionamiento de los recursos. *Íd.* No puede quedar al arbitrio de la representación legal decidir qué disposiciones reglamentarias aplican y cuándo. *Íd.* Por tanto, **es tarea de la parte peticionaria presentar al foro revisor la prueba oral bajo la que se pretende impugnar las determinaciones del foro *a quo*.** *Íd.*

Esbozada la norma jurídica, procedemos a aplicarla al recurso antes nos.

**III**

La parte apelante sostiene que el Tribunal de Primera Instancia incidió al declarar No Ha Lugar la demanda sobre desahucio en precario, bajo la premisa equivocada de que existe un posible conflicto de títulos. Aduce que el foro primario interpretó erróneamente la ley especial de desahucio en un claro abuso de discreción, prejuicio o parcialidad, toda vez que el conflicto de títulos no estaba sostenido por el expediente. Sobre ese particular, sostiene que la parte apelada no presentó prueba testimonial, documental, pericial ni de ninguna otra naturaleza que evidencie que esta poseyó la propiedad en carácter de dueña. En la alternativa, solicita que se devuelva el caso al foro de origen para que continúen los procedimientos por la vía ordinaria.

Conforme detalláramos previamente, como norma general, los tribunales apelativos aceptamos como correctas las determinaciones de hechos de los tribunales inferiores, así como su apreciación sobre la credibilidad de los testigos y el valor probatorio de la prueba presentada en la sala. Los foros apelativos no debemos intervenir con la apreciación de la prueba de los foros primarios, salvo que exista pasión, prejuicio, parcialidad o error manifiesto. Es decir, el foro primario merece deferencia ante planteamientos de error sobre admisibilidad de la prueba presentada y la apreciación que le confirió, especialmente ante la ausencia de una transcripción de los procedimientos que nos ponga en posición de lo contrario. En el caso de autos, la parte apelante no sometió copia de la transcripción de la prueba oral vertida en la vista en su fondo, ni una exposición estipulada o narrativa, por lo que, en su ausencia, se presumen correctas las determinaciones de hechos desglosadas por el foro *a quo* en la *Sentencia* apelada. En ese sentido, nuestra intervención se ciñe a atender cuestiones puramente normativas a la luz de la prueba expresamente contenida en el expediente apelativo que atendemos.

Según esbozamos, un conflicto de títulos oportunamente levantado por quien detente la posesión del bien inmueble impide la ventilación sumaria del desahucio. Ahora bien, la conversión de un pleito de desahucio en uno ordinario no configura una regla automática, pues esa decisión recae sobre la sana discreción del tribunal sentenciador. En cuanto a ello, constituye norma reiterada que el tribunal de instancia tiene discreción, de acuerdo con los hechos específicos de cada caso, para ordenar la conversión del procedimiento de desahucio sumario a uno ordinario. Como norma general, las determinaciones discrecionales del foro primario, relacionadas con el manejo del caso, merecen nuestra deferencia, a menos que se demuestre que la determinación tomada por el foro

primario fue irrazonable, abusó de su discreción o incurrió en un menoscabo a la justicia.

Tras examinar el recurso presentado por la parte apelante y los documentos que obran en el expediente, no encontramos razón alguna para intervenir con la sana discreción del foro *a quo* en la determinación apelada. De una revisión sosegada del expediente que nos ocupan, surge un conflicto de títulos que hace improcedente la acción sumaria de desahucio. En el caso de autos, el foro primario desestimó la causa de acción sumaria, por entender que el pleito ameritaba ser dilucidado por la vía ordinaria. Sobre ello, la parte apelante plantea que, ante el conflicto de títulos, el foro de instancia debía convertir el pelito en uno ordinario y continuar con los procedimientos. Sin embargo, del expediente surge que, previo a la celebración del juicio en su fondo, la parte apelada solicitó en varias ocasiones la conversión del procedimiento, mientras que el apelante se opuso y solicitó reiteradamente que el proceso fuera sumario. Por consiguiente, en ese contexto, le merecemos deferencia al manejo del caso efectuado por el foro juzgador.

En virtud de lo anterior, concluimos que no medió arbitrariedad o error, ni abuso de discreción del Tribunal de Primera Instancia en su determinación. En fin, al evaluar concienzuda y ponderadamente los eventos procesales al palio de la normativa jurídica antes esbozada, coincidimos con la determinación del foro primario.

## IV

Por las razones que anteceden, confirmamos el dictamen apelado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones