Opinión disidente emitida por el
Juez Asociado Señor Rivera García,
a la cual se unieron las Juezas Asociadas Señora Fiol Matta y Señora Pabón Chameco, y el Juez Asociado Señor Feliberti Cintrón.
Con la decisión que se emite hoy, este Tribunal ignora uno de los más fundamentales preceptos reconocidos en nuestro Código Civil: el derecho de retención.
Al resolver que el requisito de prestación de fianza es jurisdiccional y que no admite excepción, independiente-mente de que al demandado le haya sido reconocido un crédito mediante sentencia por haber realizado unas mejo-ras necesarias e indispensables, la mayoría adopta una vi-sión sumamente textualista que me veo imposibilitado de avalar.
Por entender que la acción de desahucio va dirigida ex- *1001 elusivamente a aquellos poseedores que ostentan la propie-dad en precario, y no a edificantes de buena fe con derecho a retención, respetuosamente, disiento.
I
En noviembre de 1997 Oscar Acosta Rodríguez (Acosta Rodríguez o recurrido) permitió a Luis A. Ghigliotti Laga-res (Ghigliotti Lagares o peticionario) que utilizara la parte posterior de su negocio de venta de equipos agrícolas para que almacenara sus propios componentes agrícolas de forma gratuita. Aproximadamente para mediados de 1999, el recurrido notificó a Ghigliotti Lagares que necesitaba el área que le había permitido utilizar hasta ese momento. En vista de ello, Acosta Rodríguez le ofreció al peticionario un predio de terreno frente a su negocio, para que constru-yera un almacén, por el cual suscribirían un contrato de arrendamiento posteriormente. Vista la oferta, el peticio-nario aceptó.
Por consiguiente, Ghigliotti Lagares comenzó a realizar mejoras al local. Estas consistieron en la nivelación del terreno, la instalación de una verja de tela metálica alre-dedor de este y la construcción de un techo de aluminio.(1)
Así las cosas, en enero del 2000 las partes intentaron consumar un contrato de arrendamiento el cual no fue fir-mado, debido a que el peticionario estaba en desacuerdo con algunas de sus cláusulas. No obstante, “[a]un cuando las partes no habían suscrito un contrato por escrito, sí *1002 testificaron haber llegado a unos acuerdos en relación al canon de arrendamiento”.(2)
Así pues, en febrero del 2000 Ghigliotti Lagares pagó al recurrido la renta correspondiente a los meses de enero, febrero y un mes adicional de depósito. (3) Sin embargo, no fue hasta el 18 de abril de 2000 que finalmente suscribie-ron el contrato de arrendamiento. En cuanto al contenido del contrato, las partes acordaron que
[e]l arrendatario no podr[ía] efectuar mejoras de clase alguna en la propiedad objeto de este contrato a no ser que se obtenga previamente y por escrito de EL ARRENDADOR, permiso para efectuarlas, disponiéndose que una vez realizadas las mejoras, si fueren permanentes como lo son las estructuras de concreto adheridas al inmueble, éstas queda [rían] a beneficio de EL ARRENDADOR sin que viniera este obligado a pagar valor alguno por ellas.(4)
En cumplimiento de los acuerdos contractuales, el peti-cionario sufragó el canon de arrendamiento ininterrumpi-damente desde enero de 2000 hasta noviembre de 2007 cuando dejó de pagarlo. En respuesta a ese proceder, el 18 de octubre de 2008 los recurridos presentaron ante el Tribunal de Primera Instancia una demanda de desahucio en contra de Ghigliotti Lagares, y la Sociedad Legal de Ga-nanciales compuesta por este y Jane Doe.
Consecuentemente, el 10 de marzo de 2009 los peticio-narios contestaron la demanda sin evidenciar pago alguno sobre los cánones vencidos del alquiler. Además reconvinie-ron, aduciendo que tienen derecho a retener la propiedad hasta tanto no se le repaguen las cantidades invertidas en concepto de mejoras hechas al local comercial.
*1003 Luego de varias incidencias procesales, se celebró juicio el 13 de enero de 2010. En la primera comparecencia, el Tribunal de Primera Instancia declaró “no ha lugar” la mo-ción de sentencia sumaria presentada por los recurridos. Asimismo, convirtió el caso de epígrafe en uno de desahucio ordinario.
Así las cosas, el 7 de abril de 2011 se dictó sentencia condenando a los recurridos a satisfacer el monto de seis mil setenta y siete dólares con noventa y cinco centavos ($6,077.95) que corresponden a las mejoras realizadas a la propiedad hasta el 18 de diciembre de 1999, antes de ser efectivo el contrato de arrendamiento. (5)
Por otra parte, el foro primario resolvió declarando “con lugar” el desahucio y ordenó a la parte peticionaria a sa-tisfacer el monto de 41 mensualidades vencidas a razón de $275, para un total de $11,275. Además impuso $3,000 por honorarios de abogado.
Inconforme, Ghigliotti Lagares recurrió mediante re-curso de apelación ante el Tribunal de Apelaciones. En esencia, argüyó que el foro primario erró al no reconocer su derecho de retención como constructor de buena fe, con-forme al Art. 297 del Código Civil, 31 L.P.R.A. see. 1164. Además, alegó que el Tribunal de Primera Instancia erró en requerir la otorgación de una fianza o la consignación de los cánones de arrendamiento como requisito para acu- *1004 dir en apelación, ya que el pleito se había convertido en ordinario.
El foro apelativo intermedio resolvió en lo pertinente:
Del examen del recurso ante nuestra consideración no surge que la parte apelante, señor Ghigliotti haya presentado fianza alguna en apelación contra la sentencia que ordena su desahucio. Tampoco surge que éste haya consignado el monto de la deuda por los cánones de arrendamiento no pagados a la parte demandante. El señor Ghigliotti aduce que no procede imponer tal requisito de fianza por tratarse de un pleito de desahucio tramitado por la vía ordinaria.
El examen de la disposición del artículo 631 supra, y nues-tra jurisprudencia, no hace distinción alguna en cuanto a que el requisito de fianza sea por razón de que el pleito sea trami-tado de forma ordinaria. ... En consecuencia, este foro apela-tivo carece de jurisdicción para entender en los méritos del recurso ante nuestra consideración, por lo que procede la des-estimación del recurso.(6)
No conteste con esta determinación, el peticionario pre-sentó ante este Tribunal el recurso de certiorari de epígrafe en el que plantea el error siguiente:
Erró el honorable Tribunal de Apelaciones al declararse sin jurisdicción bajo el fundamento de que el peticionario debió cumplir con las disposiciones del Artículo 631 del Código de Enjuiciamiento Civil. Petición de certiorari, pág. 7.
Atendida la petición, el 30 de jimio de 2011 concedimos al recurrido un término de 10 días para que mostrara causa por la cual no debiera expedirse el recurso. El recu-rrido así lo hizo. Contando con el beneficio de la compare-cencia de ambas partes, este Tribunal ha decidido confir-mar la sentencia apelada. No estamos contestes, por las razones que pasamos a exponer.
*1005 HH HH
A. El Art. 1433 del Código Civil, 31 L.P.R.A. sec. 4012, establece que el contrato de arrendamiento de cosas es aquel donde “una de las partes se obliga a dar a la otra el goce o uso de una cosa por tiempo determinado y precio cierto”. El arrendador está obligado a entregar la cosa ob-jeto del contrato y mantener al arrendatario en el goce pa-cífico de la cosa por el término que dure el contrato. Por su parte, el arrendatario deberá prestar el precio pactado y usar la cosa arrendada como un diligente padre de familia. Véanse los Arts. 1444-1445 del Código Civil, 31 L.P.R.A. sees. 4051-4052. Cuando el arrendatario incumple su obli-gación de pago, se abren las puertas a que el arrendador inicie una acción de desahucio judicial. Véase Art. 1459 del Código Civil, 31 L.P.R.A. see. 4066.
De acuerdo con lo anterior, nos advierte Albaladejo que "el desahucio no es una de las formas de terminar el arren-damiento, sino un medio de recobrar judicialmente la cosa inmueble arrendada, cuando aquél se acaba por la concu-rrencia de ciertas causas extintivas”. M. Albaladejo y otros, Comentarios al Código Civil y compilaciones forales, 3ra ed., Madrid, Ed. Rev. Der. Privado/Edersa, 1997, T. XX, Vol. 1-B, págs. 1255-1256.
Además, Lucas Fernández, haciendo mención de Puig Brutau, nos indica que
... ante los casos que contempla el artículo 1.569(7), subraya la peculiaridad del arriendo como contrato que origina una relación de hecho entre la persona del arrendatario y la cosa del arrendador; lo que hace que aparezca en segundo plano la mera facultad de éste de desligarse de la obligación, pues lo que principalmente importa es recuperar la cosa arrendada. Y aunque el arrendador debería limitarse a ejercitar contra el *1006 arrendatario las acciones derivadas del contrato, “como, en de-finitiva, —dice— se trata de recuperar una cosa, se emplea para tal finalidad la acción de desahucio que actúa como una reivindicatoría simplificada ...”. Albaladejo y otros, op. cit, pág. 1256.(8)
Como es sabido, el desahucio es una acción especial de carácter sumario, pues responde al interés gubernamental de atender prioritariamente la causa de acción de cual-quier titular que vea interrumpido su derecho a poseer y disfrutar un inmueble de su propiedad. Art. 620 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 2821; Crespo Quiñones v. Santiago Velázquez, 176 D.P.R. 408 (2009). Turabo Ltd. Partnership v. Velardo Ortiz, 130 D.P.R. 226, 234—235 (1992); Mora Dev. Corp. v. Sandín, 118 D.P.R. 733, 749 (1987).
Por consiguiente, es en el proceso de desahucio que se protege la propiedad del arrendador, para que la posesión de la cosa otorgada a persona ajena vuelva a su dueño original. Es por ello que su naturaleza requiere que se atienda de forma expedita y sumaria, fundamentado en la máxima de que “[l]a propiedad es el derecho por virtud del cual una cosa pertenece en particular a una persona con exclusión de cualquier otra”. Art. 280 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. lili.
En esencia, la acción de desahucio es una acción pose-soria, reconocida por su característica rápida y sumaria. Sobre este particular, Cuevillas y Sayrol expone que el des-ahucio es
... un proceso de cognición especial y sumaria que tiene por objeto la desposesión del demandado (dejado) y consecuente recuperación posesoria del actor, previa en su caso, resolución del contrato de arrendamiento u otra figura afín en cuya vir-tud venía poseyendo el demandado.
... [E]l juicio de desahucio es un proceso de carácter suma-rio— entendiendo como tal aquel que tiene limitados los me- *1007 dios de ataque o defensa o, lo que es lo mismo, tiene limitada la cognición. Por ende, tratándose de un proceso sumario, su utilización no es preceptiva, sino facultativa o electiva. Si el actor pretende acumular otras acciones que no tengan cabida en el juicio especial sumario de desahucio puede perfectamente acudir directamente al juicio plenario [declarativo ordinario]. (Escolios omitidos y énfasis nuestro). J.A. Cuevillas y Sayrol, Procesos arrendaticios urbanos y comunes, Barcelona, J.M. Bosch Editor, 1996, págs. 118-119.
Cónsono con lo antes expresado, Mucius Scaevola nos define la acción de desahucio como “un remedio legal, de carácter restitutorio y generador de un procedimiento su-mario, concedido al arrendador contra el arrendatario o el precarista para recuperar la posesión natural de la cosa arrendada o cedida en precario”. Albaladejo y otros, op. cit., pág. 1256.
En el pasado hemos resuelto que la característica me-dular de un procedimiento civil sumario es lograr de la forma más rápida y económica posible la reivindicación de determinados derechos, reduciendo al mínimo constitucio-nalmente permisible el elenco de garantías procesales. Turabo Ltd. Partnership v. Velardo Ortiz, supra. Por lo de-más, prescinde de ciertos trámites comunes al proceso ordinario, sin negar al demandado o querellado una opor-tunidad real de presentar efectivamente sus defensas. íd. Es por ello que debe ser utilizado según se haya reglamen-tado por los cuerpos legales.
Sobre este particular, Caballero Gea nos indica que la acción de desahucio es un procedimiento sumario y especial, “en contraposición al [procedimiento] ordinario”. (Én-fasis nuestro). J.A. Caballero Gea, El desahucio por preca-rio: problemática judicial, Pamplona, Ed. Arazandi, 1983, pág. 53.
En lo pertinente, Lucas Fernández postula que:
[Z]a acción de desahucio no puede ejercitarse cuando entre las partes hay complejidad de relaciones jurídicas que exigen de-terminar los derechos recíprocos en orden a las mismas. La jurisprudencia es reiterada en este sentido ... la acción de des- *1008 ahucio sólo procede cuando entre los litigantes no existen otros vínculos que los derivados del contrato de arrendamiento o de la ocupación de la cosa en precario sin relación con otro título en que pueda fundarse la posesión y disfrute de la misma .... (Énfasis suplido). Albaladejo y otros, op. cit., pág. 1257.(9)
Acorde con lo intimado esta Curia ha expresado que, siendo la posesión del inmueble lo único que se intenta recobrar mediante la referida acción sumaria, los conflictos de título no pueden dilucidarse en un procedimiento de desahucio. C.R.U.V. v. Román, 100 D.P.R. 318, 321 (1971); Negrón v. Corujo, 67 D.P.R. 398, 403 (1947); Escudero v. Mulero, 63 D.P.R. 574, 588 (1944). Esto porque podría pri-var a una de las partes de su propiedad sin el debido pro-ceso de ley, derecho salvaguardado por nuestra Constitución. Véase Art. II, Sec. 7, Const. P.R., L.P.R.A., Tomo 1.
En Aybar v. Jiménez, 60 D.P.R. 745, 748 (1942), resolvi-mos que “una casa de vivienda, una edificación de carácter permanente, no constituye una mejora útil o de recreo”. Cuando esta “es construida de buena fe, con conocimiento del dueño del terreno que lo arrendó para dicho fin y sin que se pactara nada con el que edificó para regular los derechos de uno y otro con respecto a lo edificado, no pro-cede el desahucio”. Véanse: Crespo Quiñones v. Santiago Velázquez, supra; C.R.U.V. v. Román, supra; Negrón v. Corujo, supra.
Lo anterior se basa en que no es el procedimiento suma-rio de desahucio el vehículo procesal adecuado para deter-minar el montante de la reclamación a que pueda tener derecho un demandado que ha edificado con carácter per-manente con el consentimiento del dueño del terreno. En cambio, “a menos que exista un pacto que regule los dere-chos de los litigantes, y al desestimarse la demanda de *1009 desahucio siempre se hará sin perjuicio de que se recurra a la acción ordinaria correspondiente dentro de la cual po-drán dirimirse los derechos de una y otra parte”. Aybar v. Jiménez, supra, pág. 749.
Por otra parte, la necesidad de convertir el procedi-miento sumario en ordinario no puede ocasionar dilaciones innecesarias, por lo que el demandado deberá establecer prima facie los méritos de su defensa. Marín v. Montijo, 109 D.P.R. 268, 278 (1979). De igual forma, no puede re-dundar en la creación de una regla automática. Por ello, la guía en estos casos deberá ser el sano discernimiento judicial. Turabo Ltd. Partnership v. Velardo Ortiz, supra, pág. 241.
Concretamente, una vez se esgrimen las defensas perti-nentes por el demandado, el juzgador deberá auscultar si estas son meritorias, los hechos específicos que aduce “y discrecionalmente ordenar la conversión del procedimiento al juicio ordinario”. Turabo Ltd. Partnership v. Velardo Ortiz, supra, págs. 245-246.
B. El Art. 621 del Código de Enjuiciamiento Civil, 32 L.P.R.A. see. 2822, establece que “[p]rocederá el desahucio contra los inquilinos, colonos y demás arrendatarios, los administradores, encargados, porteros o guardas puestos por el propietario en sus fincas, y cualquier otra persona que detente la posesión material o disfrute precariamente, sin pagar canon o merced alguna”. (Enfasis nuestro).
La figura del precarista se remonta al Derecho Romano. En la antigua Roma “el precario constituía una evidente situación de hecho, de verdadera ‘possessio’ en sentido téc-nico, cuyo titular estaba protegido frente a terceros por los interdictos posesorios”. Caballero Gea, op. cit, pág. 19. Además, se trataba del otorgamiento de una cosa o derecho por parte de su propietario de forma gratuita, con la opción de ser poseída nuevamente cuando le plazca.
Esta figura se hizo extensiva a España “por la jurispru-dencia recaída con la relación al número 3 del artículo *1010 1.565 de la Ley Procesal, que recogió el criterio ya mante-nido en la ley de 18 de junio de 1877”. Caballero Gea, op. cit., pág. 19. Asimismo, el Tribunal Supremo de España, en su Resolución del 5 de diciembre de 1934, nos indica
... que el precario a que alude el artículo 1.565 de la Ley de Enjuiciamiento Civil, no sólo se refiere a la acepción dada por el Derecho Romano, sino que se extiende a todos cuantos, sin pagar merced, poseen un inmueble sin título o con título inefi-caz para enverar el dominical que ostenta quien promueve el desahucio. Véase Caballero Gea, op. cit., pág. 20.
Ciertamente la figura del precarista en el Código de En-juiciamiento Civil de Puerto Rico tiene su origen en el Art. 621, proveniente del Art. 1.565 de Ley de Enjuiciamiento Civil Española. Por consiguiente, es un precarista, según nuestro ordenamiento jurídico, aquel que ostenta propie-dad perteneciente a otro de forma gratuita y sin el consen-timiento de éste. A esos efectos el procedimiento adecuado y expedito para obtener la posesión de la propiedad por el dueño es el desahucio.
En cuanto a ello, la jurisprudencia española ha definido al precario como “la ocupación sin título, o en virtud de un título nulo, o que haya perdido su validez, una mera ocu-pación tolerada, sin contraprestación, y gratuita (SS. 27-11-1968, R. 5820; 8-11-1968, R. 4965; 27-10-1967, R. 4039; 7-11-1958, R. 3434)”. P. de Villanueva y Santamaría, Pro-ceso de cognición y juicios verbal y de desahucio, 2da ed., Pamplona, Ed. Aranzadi, 1978, págs. 343-344.
Ciertamente, el precarista está en una situación donde no puede haber posibilidad de título. En estos casos aplica “el procedimiento dispuesto por la Ley de Desahucio que autoriza la acción por el dueño de una finca contra cual-quier persona que detente la posesión material o disfrute precariamente de la misma sin pagar canon o merced alguna”. C.R.U.V. v. Román, supra, pág. 325.
En C.R.U.V. v. Román, supra, acogimos lo resuelto por *1011 el Tribunal Supremo de España en su Sentencia de 3 de mayo de 1963, por el cual se exige para que prospere un desahucio en precario la presencia de dos fundamentos. A saber, que el actor de la acción tenga la posesión real de la finca a título de dueño, de usufructuario o cualquier otro que le dé derecho a disfrutarla y que el demandado haya ocupado el inmueble sin otro título que la mera tolerancia del dueño o poseedor, ya por nunca tener título o por ha-berlo perdido.
Es por ello que el que construye de mala fe se considera un precarista, ya que pierde lo edificado sin derecho a indemnización. Por ende, procede contra él una acción de desahucio en precario. Art. 298 del Código Civil, 31 L.P.R.A. see. 1165. Véase, también, A.T.P.R. v. Padín Santiago, 104 D.P.R. 426, 428 (1975).
Contrario es aquel que construye en suelo ajeno con el consentimiento del dueño, pues este se entiende que es un edificante de buena fe, quien además posee un título sobre lo edificado. Por lo tanto, tendrá derecho a retener el te-rreno ajeno hasta tanto no se le indemnice por lo edificado. (Enfasis nuestro). Véanse: Art. 297 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 1164; Crespo Quiñones v. Santiago Velázquez, supra; C.R.U.V. v. Román, supra.
En otras palabras, “bastará que un demandado en des-ahucio produzca prueba suficiente ante la corte para de-mostrar que tiene algún derecho a ocupar dicho inmueble y que tiene un título tan bueno o mejor que el del deman-dante para que suija un conflicto de título que haga impro-cedente la acción”. Escudero v. Mulero, supra, pág. 589.
En virtud de ello, la buena fe del arrendatario se ad-quiere no meramente cuando construye con permiso del propietario, sino cuando este “con su anuencia procede a relevarlo en el ejercicio de una obligación que la ley le im-pone, conservándole un elemento de su patrimonio cuyo deterioro es inminente”. (Escolio omitido). Marín v. Montijo, supra, pág. 277.
*1012 No obstante, al ser el desahucio un procedimiento de naturaleza sumaria de gran utilidad, no basta con solo aducir que se han hecho mejoras necesarias con el consen-timiento expreso del arrendador. Así pues, le corresponde al demandado demostrar fehacientemente el mérito de su reclamo.
Es por ello que debe, en el momento adecuado, “presen-tar prueba que lleve al ánimo del juzgador la razonable certeza de que habrá de demostrar en su día que con el expreso consentimiento del arrendador demandante, ha ejecutado mejoras necesarias en la propiedad arrendada, cuyo costo no le ha sido satisfecho”. (Enfasis suprimido). Marín v. Montijo, supra, pág. 278; C.R.U.V. v. Román, supra, pág. 322.
C. El Art. 631 del Código de Enjuiciamiento Civil dis-pone lo siguiente:
No se admitirá al demandado el recurso de apelación si no otorga fianza, por el monto que sea fijado por el [tribunal] para responder de los daños y perjuicios que pueda ocasionar al demandante y de las costas de apelación; pudiendo el de-mandado, cuando el desahucio se funde en falta de pago de las cantidades convenidas, a su elección, otorgar dicha fianza o consignar en secretaria el importe del precio de la deuda hasta la fecha de la sentencia. 32 L.P.R.A. see. 2832.
El requisito que obliga a un demandado a prestar fianza en apelación es jurisdiccional en todo tipo de pleito de des-ahucio, aun cuando este no está fundamentado en falta de pago. Blanes v. Valldejuli, 73 D.P.R. 2, 5 (1952). El propó-sito de ello consiste en que la fianza no existe para garan-tizar únicamente los pagos adeudados sino también los da-ños resultantes de mantener en suspenso el libre uso de la propiedad afectada mientras se dilucida la apelación. Crespo Quiñones v. Santiago Velázquez, supra, págs. 413-414. “Lo anterior aconseja que sea el Tribunal de Primera Instancia el foro que fije la fianza, como paso previo y ju-risdiccional a la radicación del recurso de apelación”. Ex- *1013 posición de Motivos de la Ley Núm. 378-2000, que en-mendó el Art. 631, supra, 2000 (Parte 2) Leyes de Puerto Rico 2082. “Nada de esto cambió con la aprobación de la Ley de la Judicatura de 2003, supra, ni con la Ley Núm. 129, supra”. Crespo Quiñones v. Santiago Velázquez, supra, pág. 414.
Teniendo presente que la prestación de la referida fianza constituye un requisito jurisdiccional, si el deman-dado no cumple con dicho requisito, ni consigna los cáno-nes adeudados cuando el desahucio se funde en la falta de pago, el Tribunal de Apelaciones no adquiere jurisdicción para atender el recurso de apelación. Crespo Quiñones v. Santiago Velázquez, supra.
Por otro lado, aquellos demandados cuya insolvencia económica ha sido reconocida por el tribunal están exentos de cumplir con dicho requisito. Crespo Quiñones v. Santiago Velázquez, supra; Bucaré Management v. Arriaga García, 125 D.P.R. 153, 158 (1990); Molina v. C.R.U.V, 114 D.P.R. 295, 297-298 (1983). Esto es así pues dicho precepto se encuentra en armonía con la intención del legislador de garantizar el acceso a los tribunales de los litigantes insolventes. Molina v. C.R.U.V., supra; Bucaré Management v. Arriaga García, supra, pág. 157.
HH HH HH
El presente cáso nos brinda la oportunidad de resolver si es necesaria la prestación de una fianza para apelar de una sentencia en un caso de desahucio cuando el apelante es un edificante de buena fe.
El peticionario alega que las disposiciones del Art. 631 del Código de Enjuiciamiento Civil, supra, no aplican en este caso ya que el pleito de desahucio fue tramitado en un juicio ordinario por el Tribunal de Primera Instancia. Ade-más, aduce que al haber sido reconocido por el foro prima-rio como un edificante de buena fe, ostenta un derecho de *1014 retención sobre la propiedad hasta que le sean repagadas las cantidades invertidas en mejoras necesarias. Luego de analizar los hechos pertinentes y el derecho aplicable, re-solvería que son meritorios los planteamientos del peticionario. Veamos.
Como parte de las conclusiones a las que llegó el foro primario en su Sentencia de 7 de abril de 2011, es de particular importancia la determinación siguiente:
En cuanto a las mejoras que reclama la parte demandada reconviniente, realizadas a la propiedad arrendada, durante su estadía hasta el 18 de diciembre de 1999, antes de estar efectivo el contrato de arrendamiento, no tenemos duda alguna de que éstas constituyen mejoras, las cuales deben ser compen-sadas por el dueño del terreno. El Tribunal ha dado credibili-dad al testimonio del Sr. Luis A. Ghigliotti Lagares en cuanto a los Exhibits ofrecidos y admitidos en evidencia.
Aquí se trata de reparaciones indispensables y necesarias para conservar la propiedad en estado de servir al uso que ordinariamente se le destina. Las mejoras eran necesarias para el particular y exclusivo uso que pretendió darle el de-mandado, ya que las mismas son mejoras indispensables y ne-cesarias o de reparación o seguridad que se hicieran en la cosa (la propiedad arrendada) para impedir su pérdida o deterioro. {Punta Borinquen Shopping Center, Inc. v. Pérez Feliciano, supra.).
Estas fueron realizadas por voluntad y a iniciativa de la parte demandada, y que fueran realizadas a ciencia y pacien-cia del demandante, con el consentimiento tácito o expreso del arrendador. (Marchand González v. Montes Viera, ante; Berrocal v. Tribunal de Distrito, supra; Santiago v. Berlingeri, supra).
El demandado Sr. Luis A. Ghigliotti Lagares presentó en evidencia unas facturas que no determinaron ni pudieron pre-cisar si la usó en el terreno arrendado o fue en sus obras como contratista.
Por lo tanto, por la credibilidad adjudicada y el valor proba-torio de la prueba sometida, concluye el Tribunal que la parte demandada reconviniente tiene derecho a reclamar que se le indemnice por las mejoras realizadas, conforme hemos ex-puestos [sic] en este escrito que a tenor con la prueba sometida y admitida en evidencia en cuanto a los siguientes gastos:
Dichas cantidades ascienden a la cantidad de $6,077.95.
*1015 Apéndice de la Petición de certiorari, págs. 77-78.
Como puede observarse, el Tribunal de Primera Instan-cia llegó a la conclusión de que el peticionario realizó unas mejoras necesarias en la propiedad de Acosta Rodríguez. Además, estas fueron hechas a ciencia y paciencia del re-currido, es decir, fueron consentidas tácitamente. Nótese que el peticionario solo posee un crédito sobre las mejoras realizadas hasta el 18 de diciembre de 1999, antes de que las partes pactaran un contrato de arrendamiento.
Por lo tanto, no son aplicables las disposiciones del con-trato de arrendamiento firmado en abril de 2000 que cla-ramente establece que las mejoras realizadas por el peti-cionario quedarían a beneficio del arrendador sin que este estuviese obligado a pagar valor alguno por ellas. En au-sencia de una disposición contractual que regule la rela-ción entre las partes, entran en vigor los preceptos del Có-digo Civil referentes a la accesión y al constructor de buena fe en suelo ajeno dispuestos en su Art. 297.
Asimismo, es inevitable la conclusión de que la cons-trucción del almacén se hizo a ciencia y paciencia de Acosta Rodríguez, por lo cual es forzoso colegir que se trata de un edificante de buena fe ya que construyó con el consenti-miento del arrendador.
Distinto a lo que plantea el recurrido, el peticionario no puede ser considerado como un precarista. Según discuti-mos anteriormente, un precarista es una persona que no tiene derecho o título alguno que justifique la posesión de la cosa. En este caso, el peticionario ha sido reconocido como un constructor de buena fe, por lo tanto posee un derecho de retención sobre la cosa hasta que sea indemni-zado por el propietario del terreno.
El expediente refleja que durante el transcurso del pleito las partes presentaron memorandos respecto a si el caso debía tramitarse por la vía sumaria.(10) El foro prima- *1016 rio no tomó una determinación inmediata sobre el particular, y permitió que las partes realizaran un amplio descu-brimiento de prueba que incluyó deposiciones, solicitudes de producción de documentos, vistas sobre el estado de los procedimientos y conferencias con antelación al juicio.
Tiempo después y llegado el día del juicio, el recurrido solicitó al tribunal que se expresara sobre si el procedi-miento se estaba tramitando por la vía sumaria. El Tribunal expresamente resolvió: "En cuanto a la solicitud de que se aclare el tipo de procedimiento en el presente caso, se hace constar que es uno ordinario".(11)
Cónsono con lo anterior, en la sentencia del foro prima-rio se reafirma que el caso se dilucidó por la vía ordinaria al expresar: “Llamado el caso se determinó por el Tribunal declarar No ha Lugar [sic] [la] Sentencia Sumaria some-tida por la parte demandante y se convirtió el caso en un desahucio ordinario”.(12)
De acuerdo con lo anterior, no debe albergarse duda al-guna de que el caso ha sido tramitado por la vía ordinaria. Así pues, para resolver la controversia que nos ocupa es necesario examinar la naturaleza del pleito que se nos pre-senta, para así determinar si es requerida la prestación de fianza según dispone el Art. 631 del Código de Enjuicia-miento Civil, supra. Veamos.
El Art. 631 del Código de Enjuiciamiento Civil, supra, forma parte del entramado procesal del procedimiento su-mario de desahucio. Conscientes del carácter sumario de la acción de desahucio, la Asamblea Legislativa aprobó la Ley 129-2007 (32 L.P.R.A. see. 2832), “con el propósito de agili-zar, clarificar y uniformar el derecho aplicable al procedi-miento de desahucio contra personas que detentan la pose-sión material o el disfrute de una propiedad inmueble *1017 precariamente, sin pagar canon o merced alguna ..(Én-fasis nuestro). Exposición de Motivos de la Ley Núm. 129-2007.
Ciertamente, de la citada Exposición de Motivos se deduce un aspecto importante del Art. 631. Esto es, que la acción de desahucio va dirigida única y exclusivamente a aquellos que posean el bien en precario. Es con respecto a esos casos que el proceso de desahucio revela su naturaleza sumaria y expedita.
En virtud de este axioma, el requisito establecido en el Art. 631 va en perfecta consonancia con las acciones diri-gidas contra precaristas que no tienen título o justificación alguna para retener la cosa mientras apela de una deter-minación judicial. Por el contrario, cuando se trata de un constructor de buena fe en suelo ajeno, reconocido me-diante sentencia, este obtiene un derecho a retener la cosa hasta que se le compense conforme al Art. 297 del Código Civil, supra. En esos casos, la premisa de precariedad no está presente y lo que procede es un trámite judicial ordi-nario, en todas las etapas del proceso.
Conforme a la discusión precedente, no es lógico condi-cionar la apelación del demandado, como resuelve la ma-yoría, a que cumpla con unos requisitos cuya razón de ser es contraria a su derecho de retención. Recordemos que el propósito del Art. 631 no es solo recuperar los pagos adeu-dados, sino también los daños resultantes de mantener congelado el libre uso de la propiedad afectada mientras se dilucida la apelación. Por lo tanto, si el Art. 297 le reconoce al constructor de buena fe el derecho a retener la cosa hasta que se le indemnice, sería un contrasentido requerir fianza como requisito jurisdiccional en apelación. Por el contrario, resulta manifiesto que el propósito del Art. 631 no es que se aplique este requisito a demandados recono-cidos como edificantes de buena fe.
Como hemos visto, en este caso se le reconoció al peti-cionario, mediante sentencia, los elementos necesarios *1018 para considerarlo un constructor de buena fe en suelo ajeno. Las determinaciones de hechos expuestas en la sen-tencia del Tribunal de Primera Instancia no dejan duda alguna respecto a que Ghigliotti Lagares construyó con el consentimiento del recurrido y que no existía un contrato en ese momento que rigiera la relación entre las partes.
En torno a esta realidad fáctica, la determinación de una mayoría de este Tribunal se equivoca al no reconocer que el foro primario, para todos los efectos, determinó que el peticionario es un constructor de buena fe. Si bien es cierto que el tribunal no utiliza esas palabras exactas, sí expresa que “se trata de reparaciones indispensables y ne-cesarias para conservar la propiedad en estado de servir al uso que ordinariamente se le destina. Las mejoras eran necesarias para el particular y exclusivo uso que pretendió darle el demandado, ya que las mismas son mejoras indispensables y necesarias o de reparación o seguridad que se hicieran en la cosa (la propiedad arrendada) para impedir su pérdida o deterioro” y que “[é]stas fueron realizadas por voluntad y a iniciativa de la parte demandada, y que fue-ran realizadas a ciencia y paciencia del demandante, con el consentimiento tácito o expreso del arrendador”.(13)
Siendo ello así, colegimos que el peticionario es un constructor de buena fe respecto a todo aquello que el foro pri-mario resolvió se había construido previo a la consumación del contrato de arrendamiento. Respecto a lo construido a esa fecha, el peticionario no es un precarista y por tal ra-zón no procede la imposición de una fianza para acudir en apelación, pues este mecanismo forma parte de las dispo-siciones procesales dirigidas a salvaguardar los derechos del dueño contra personas que poseen la cosa injustificada-mente y en precario.
La conclusión no puede ser otra. En el pasado, hemos resuelto que en situaciones donde existe un conflicto de *1019 título, el caso debe tramitarse por la vía ordinaria.(14) Opi-namos que cuando al demandado se le ha reconocido un crédito por mejoras realizadas en propiedad ajena, y cuando el trámite del desahucio se ha cambiado a la vía ordinaria, no es necesario prestar una fianza para acudir en apelación. Ahora bien, el hecho de que el caso haya sido tramitado por la vía ordinaria, de por sí solo, no es razón suficiente para automáticamente eximir al demandado del pago de la fianza para acudir en apelación. Para que se le releve de esta obligación, tendrá que probarse que en efecto el demandado posee un crédito con respecto a la pro-piedad objeto de la acción de desahucio.
IV
Por los fundamentos antes expuestos, expediría el re-curso de certiorari y revocaría la sentencia del Tribunal de Apelaciones por la cual se declara sin jurisdicción para atender la apelación. En consecuencia, ordenaría la devo-lución del caso a ese foro para que resuelva si erró el Tribunal de Primera Instancia al no permitirle al peticionario presentar prueba sobre el costo de reproducción, menos de-preciación, del almacén según la etapa de construcción en que se encontraba en diciembre de 1999.

 Según surge de las determinaciones de hechos realizadas por el foro prima-rio, y conforme al testimonio del Sr. Israel Sepúlveda quien es empleado del recu-rrido, “recordaba que para el mes de diciembre de 1999, el predio de terreno donde se encontraba el demandado se encontraba nivelado con material de relleno y tenía una veija de alambre eslabonado (‘cyclon fence’) [sic] alrededor del local. Que trabajó en la construcción de un domo de aluminio para establecer el negocio del demandante y recuerda claramente que inauguraron el domo de aluminio para el mes de enero de 2000”. Apéndice de la Petición de certiorari, pág. 72.

 íd.

 En apoyo a estas declaraciones, se ofreció por estipulación de las partes el (Exhibit II Est.). Este documenta que en febrero de 2000 Ghigliotti Lagares hizo entrega del cheque número 4319 al señor Acosta Rodríguez por $675 para el pago de renta de los meses de enero, febrero y un mes de depósito. El canon de arrenda-miento quedó establecido en $250_ mensuales, más la cantidad de $25 de penalidad en los atrasos del pago de renta. íd.

 Íd., pág. 167.

 Testificó el señor Ghigliotti Lagares que el 19 de diciembre celebró su fiesta navideña y ya existía el local veijado, un techo de aluminio y un piso de concreto. Además, declaró que al 31 de diciembre de 1999 había terminado la totalidad de la construcción existente en el local arrendado y que la misma se encuentra al día de hoy en iguales condiciones desde esa fecha. Sostuvo que desde la fiesta de navidad de 18 de diciembre de 1999 hasta el 31 de diciembre de 1999, estuvo realizando trabajos de su negocio todos los días de la semana, inclusive los domingos. De acuerdo a la prueba presentada, el foro primario concluyó que el peticionario tiene derecho a que se le reconozca un crédito de $6,077.95 por los gastos incurridos en el local comercial. No obstante, el Tribunal de Primera Instancia restó credibilidad al testimonio de Ghigliotti Lagares en el sentido que pudiera construir la totalidad de la edificación existente en el término de 13 días, desde 18 de diciembre de 1999 hasta el 31 de diciembre de 1999, máxime cuando el mismo peticionario testificó que ocupó la tota-lidad de su tiempo, los siete días de la semana en el desempeño de su trabajo.

 Apéndice de la Petición de certiorari, págs. 21-22.

 El Art. 1459 del Código Civil de Puerto Rico, 31 L.P.R.A. see. 4066, proviene del Art. 1.569 del Código Civil de España.

 Véase, además, J. Puig Brutau, Fundamentos de Derecho Civil, Barcelona, Ed. Bosch, 1956, T. II, pág. 296 y ss.

 Véase, además, Q.M. Scaevola, Código Civil, Madrid, Inst. Editorial Reus, T. XXIV, Ira parte, 1952, pág. 597 y ss.

 Véase Apéndice de la Petición de certiorari, págs. 155 y 160.

 Véase Minuta de 13 de enero de 2011, Apéndice de la Petición de certiorari, pág. 99.

 Véase Sentencia de 7 de abril de 2011, Apéndice de la Petición de certiorari, pág. 68.

 Véase Apéndice de la Petición de certiorari, pág. 78.

 C.R.U.V. v. Román, 100 D.P.R. 318 (1971).